# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON


GEORGE SKATZES,

                Petitioner,           :     Case No. 3:09-cv-289

   - vs -                         District Judge Timothy S. Black
                                     Magistrate Judge Michael R. Merz

WARDEN, Mansfield Correctional
   Institution,
                               :
                Respondent.


# DECISION AND ORDER


This capital habeas corpus case is before the Court on Petitioner's Motion to Expand the Record (ECF No. 145) and Motion to Correct and Expand the Record (ECF No. 146). Additionally, the question of ripeness as to Skatzes' gateway claim of actual innocence as it pertains to the procedural posture of his First Ground for Relief, ineffective assistance of counsel (See Traverse, ECF No. 42), as well as his Memorandum on Gateway Innocence Argument for Discovery Documents Filed Under Seal are before the Court (ECF No. 96).

Each of the pending motions is a non-dispositive pre-trial motion which a Magistrate Judge has authority to decide in the first instance, subject to appeal to the presiding District Judge.

The Court had previously granted discovery and the parties entered into a stipulated protective order regarding sealing of the discovery (ECF Nos. 76, 81, 83, 104, 105, 108). Petitioner then briefed the applicability of the discovery documents with respect to his argument that, although this particular sub-claim was defaulted in state court, it fell under the miscarriage of

justice exception, to which the Warden responded (Memo on Gateway Actual Innocence, ECF No. 96); (Response to Memo on Gateway Innocence, ECF No. 104). Status reports as to the ripeness of the gateway innocence argument have been submitted by both parties (ECF Nos. 114, 115, 116) Petitioner has argued that the case is not yet ripe as he may request additional discovery as developed through the deposition of trial counsel (ECF No. 114, PageID 21310). Petitioner's counsel planned to submit both the deposition transcripts as well as supporting confidential discovery documents used during the depositions, and the Court had previously granted him until September 30, 2014, to take the depositions and move to expand the record with the discovery as it related to his gateway innocence argument. *Id.*, *see also* Order Granting Unopposed Motion to Continue Discovery until September 30, 2014, ECF No. 101. On September 30, 2014, Petitioner filed under seal a Motion to Expand the Record Under Habeas Rule 7, with discovery attachments (ECF Nos. 118, 119). This was denied for failure to comply with proper citation of record references, and Petitioner refiled (ECF Nos. 145, 146, 147). Respondent asserts that the case is not only ripe but that consideration of the discovery documents is precluded by *Cullen v. Pinholster*, 563 U.S. 170, (2011) (Warden's Status Report, ECF No. 115, PageID 21312)(see also Warden's Refiled Status Report, ECF No. 148, PageID 24197).

**EXPANSION OF RECORD**

Skatzes wishes to expand the record with the following:

(1)     The deposition transcript of trial counsel Robert Dixon with deposition exhibits;

(2)     The deposition transcript of trial counsel Jeffry Kelleher with deposition exhibits;

(3)     The affidavit of the post-conviction mitigation psychologist, Dr. Jeffrey Smalldon;

(4)      The set of records relied on by Dr. Smalldon and referenced by him during his review of the case;

(5)      All exhibits attached to Skatzes's Gateway Innocence Memorandum that were filed with this Court under seal on January 21, 2014;

(6)      Transcript excerpts from the trials of Jason Robb, Carlos Sanders (Hasan), and James Were that Skatzes relied on in his Traverse to support his gateway innocence argument;

(7)      Transcript of Anthony Lavelle's polygraph examination taken on May 17, 1994, that Skatzes relied on in his Traverse to support his gateway innocence argument;

(8)       Affidavits and declarations taken from Wayne Flannigan, Roy Donald, Greg Durkin, James Bell, and Leroy Elmore filed in other Lucasville cases, and relied on by Skatzes in his Traverse to argue gateway innocence;

(9)       Transcript of a records deposition of Austin Stout, counsel for the Ohio Department of Rehabilitation and Corrections [hereafter, ODRC], with exhibit, taken in this habeas case on September 18, 2012, on the joint motion of the parties;

(10)       Recording and transcript of post-trial statement made by Prosecutor Daniel Hogan, along with declaration of Derrick Jones who interviewed Hogan;

(11)       Declaration of attorney Staughton Lynd, authenticating materials obtained from other Lucasville cases that Skatzes relied on [in] his Traverse;

(12)       Affidavit of habeas counsel Vicki Werneke, explaining her review of trial counsel's file, and;

(13)       Affidavit of habeas counsel Joseph Wilhelm, explaining his review of the trial counsel's files.

(Motion, ECF No. 146, PageID 24147.)

Skatzes asserts that the expansion is proper because these materials are "relevant to the determination of the merits of the petition." *Id*. at 24148.  He argues that in terms of his ineffective assistance of counsel claims, his First, Third, Seventh, and Eleventh Grounds for Relief, he is entitled to expansion of the record and *de novo* review. *Id*. at 24154-6.  He bases this

on his belief that the Ohio Court of Appeals[1] misapplied the procedural bar of res judicata to several of his sub-claims, completely failed to adjudicate others, and that the decision is contrary to an objectively unreasonable application of Supreme Court law under §§ 2254(d)(1). *Id*. at PageID 24156-8.   Additionally, he argues that the expansion of the record is necessary in determining whether there is a basis for a miscarriage of justice claim to excuse the procedural default of sub-claim A in the First Ground for Relief. *Id*.

Respondent filed a Memorandum in Response to Petitioner's Gateway Innocence Argument on February 24, 2014 (ECF No. 104).   The Warden primarily attacks Petitioner's position on the basis that the "newly offered evidence" is not new, but rather largely consists of arguments presented at trial, and as such is not sufficient to meet the actual innocence gateway of *Schlup v. Delo*, 513 U.S. 298, 324 (1995). *Id*. at PageID 21261-5.   Later, in his status report, the Warden further raises the argument that under *Cullen v. Pinholster*, 563 U.S. 170 (2011), Petitioner is prohibited from presenting new material in federal court unless it falls under one of the exceptions (ECF No. 115, PageID 21312).   Respondent argues,

> Skatzes fails to present any argument as to what exception under *Pinholster* the additional discovery would be able to be considered by this Court.   It is no longer in doubt that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits.

*Id*. at PageID 21313.

Petitioner counters however that *Pinholster* is in effect only if the state court adjudicated the claims on the merits (Motion, ECF No. 146, PageID 24152, *citing Pinholster* and *McClellan v. Rapelje*, 703 F.3d 344, 351 (6th Cir. 2013)).   If the state court's adjudication deserves no

---

[1] The Supreme Court of Ohio refused jurisdiction over his post-conviction appeal, so the court of appeals' decision serves as the last reasoned opinion under *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

deference, as Skatzes is presently arguing, then the federal court may take new evidence. *Id.* at

PageID 24153.

The Antiterrorism and Effective Death Penalty Act ("AEDPA") took effect on April 24,

1996. Skatzes filed his petition on April 5, 2010 (Doc. No. 25). As Skatzes' petition was

submitted after the Act was signed it is subject to its provisions. 28 U.S.C. § 2254(d), as amended

by the AEDPA, provides:

> (d)    An application for a writ of habeas corpus on behalf of a
> person in custody pursuant to the judgment of a State court shall not
> be granted with respect to any claim that was adjudicated on the
> merits in state court proceedings unless the adjudication of the
> claim-
>
> (1)    resulted in a decision that was contrary to, or
> involved an unreasonable application of, clearly established federal
> law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an
> unreasonable determination of the facts in light of the evidence
> presented in the State court proceeding.
>
> (e)(1) In a proceeding instituted by an application for a writ of
> habeas corpus by a person in custody pursuant to the judgment of a
> State court, a determination of a factual issue made by a State court
> shall be presumed to be correct. The applicant shall have the
> burden of rebutting the presumption of correctness by clear and
> convincing evidence.

Any factual finding made by the state court is presumed to be correct and a petitioner must

rebut the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e). A

state court's decision is contrary to the Supreme Court's clearly established precedent if (1) the

state court applies a rule that contradicts the governing law as set forth by the Supreme Court case

law, or (2) the state court confronts a set of facts that is materially indistinguishable from those in

a decision of the Supreme Court and nonetheless arrives at a result different from Supreme Court precedent. *Terry Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). A state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal rule [from the Supreme Court] . . . but unreasonably applies it to the facts of the particular state prisoner's case," "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply,. . . [if the state court] unreasonably refuses to extend that principle to a new context where it should." *Williams*, 529 U.S. at 407-08.

In *Cullen v. Pinholster*, 563 U.S. 170 (2011), the Supreme Court held that a federal court's review of a state court decision under 28 U.S.C. § 2254(d)(1) is strictly limited to "review of the state court record," and that evidence acquired through an evidentiary hearing may not be considered. *Id.* at 182.

> In [*Pinholster*], the petitioner argued that his penalty phase attorney was ineffective because that attorney failed to introduce mitigating evidence of mental disorders. [*Pinholster*,] 131 S.Ct. at 1396. In denying the petition, the Supreme Court held that a federal court's review of a state court decision under 28 U.S.C. § 2254(d)(1) is strictly limited to "review of the state court record . . . ." *Id.* at 1399. The Supreme Court further stated that section 2254(e)(2) only "continues to have force where Section 2254(d)(1) does not bar federal habeas relief." *Id.* at 1401. The Supreme Court explained this holding, stating that Section 2254(d) only governs claims that were adjudicated on the merits in state court whereas Section 2254(e)(2)'s limit on habeas discovery "restricts the discretion of federal habeas courts to consider new evidence when deciding claims that were not adjudicated on the merits in state court." *Id.* [*Pinholster*] indicates that the Court cannot now consider the contents of outside discovery in determining if the decision of the state court was an "unreasonable application of [ ] clearly established federal law," so long as the state court ruling was made on the merits. 28 U.S.C. § 2254(d)(1). FN1

> FN1.  The plain language of 28 U.S.C. § 2254(d)(2) also
> limits the Court's review to of [sic] "the evidence presented
> in the State court proceeding."  28 U.S.C. § 2254(d)(2);
> [*Cullen*].  131 S.Ct. at 1400 n. 7.  Thus, under both
> Section[s] of 2254(d), the Court may not consider outside
> evidence unless the petitioner did not already litigate the
> issue on the merits.

*Trimble v. Bobby*, No. 5:10-CV-00149, 2011 U.S. Dist. LEXIS 42165, *5-6 (N.D Ohio, Apr. 19, 2011).

Rule 7 of the Rules Governing Section 2254 Cases, states generally that if a petition is not dismissed, a judge may direct the parties to expand the record by submitting additional materials related to the petition.  "The purpose of Rule 7 'is to enable the judge to dispose of some habeas petitions not dismissed on the pleadings, without the time and expense required for an evidentiary hearing.'" 28 U.S.C. § 2254 (Rule 7, advisory committee notes); *see also Jamison v. Collins*, 291 F.3d 380, 387 (6th Cir. 2002).

"When expansion of the record is used to achieve the same end as an evidentiary hearing, the petitioner ought to be subject to the same constraints that would be imposed if he had sought an evidentiary hearing." *Boyko v. Parke*, 259 F.3d 781, 790 (7th Cir. 2001).

> Petitioner states "The requirements contained in Section 2254(e)(2)
> are also applicable to Habeas Rule 7 motions." *Id*. at 2, citing
> *Holland v. Jackson*, 542 U.S. 649, 653 (2004); *Owens v. Franks,*
> 394 F.3d 490, 498-99 (7th Cir.2005); and *Smith v. Palmateer,* 397
> F.3d 1236, 1241 (9th Cir. 2005).  Respondent insists on the same
> legal proposition, relying on *Samatar v. Clarridge*, 225 Fed. Appx.
> 366 (6th Cir. 2007).  The *Samatar* court also relied on *Owens* and on
> *Boyko v. Parke,* 259 F.3d 781 (7th Cir. 2001).
>
> This Court agrees with the proposition because allowing a petitioner
> to introduce evidence through expansion of the record which he or
> she could not introduce at an evidentiary hearing because of §

> 2254(e)(2) would subvert the purpose of Congress in adopting the statute as part of the AEDPA. Congress did not purport to amend Habeas Rule 7, but AEDPA and the Habeas Rules are *in pari materia* and should be interpreted consistently with one another to carry out the Congressional purpose.[2]

*Hughbanks v. Hudson*, 2009 U.S. Dist. LEXIS 87848, *3-4 (S.D. Ohio 2009); *followed Bays v. Warden*, Case No. 3:08-cv-076 (Decision and Order, ECF. No. 60, July 19, 2010).

Pursuant to AEDPA and before *Pinholster*, a prisoner could have introduced new evidence gained in an evidentiary hearing or through discovery "only if [the prisoner] was not at fault in failing to develop that evidence in state court, or (if he was at fault) if the conditions prescribed in § 2254(e)(2) were met." *Holland v. Jackson*, 542 U.S. 649, 652-53 (2004), *citing Michael Williams v. Taylor*, 529 U.S. 420, 431-37 (2000). However, post-*Pinholster*, "the Sixth Circuit has, under Section 2254(d)(1) review, disregarded evidence gathered during federal habeas proceedings." *Group v. Robinson*, 2015 U.S. Dist. LEXIS 124956, *5 (N.D. Ohio 2015), *citing Loza v. Mitchell*, 766 F.3d 466, 494 (6th Cir. 2014). In reaching this conclusion the court quoted *Caudill v. Conover*, 871 F. Supp. 2d 639, 645 (E.D. Ky 2012), in that "[i]t would defy logic to preclude a petitioner from developing factual information in an evidentiary hearing [under *Pinholster*], but allow [the petitioner] to introduce the same factual information via discovery and

---

[2] In interpreting statutes, courts should

> 1. Decide what purpose ought to be attributed to the statute and to any subordinate provision of it which may be involved; and then
> 2. Interpret the words of the statute immediately in question so as to carry out the purpose as best it can, making sure, however, that it does not give the words either (a) a meaning they will not bear, or (b) a meaning which would violate any established policy of clear statement.

Hart and Sacks, THE LEGAL PROCESS (Eskridge & Frickey ed. 1994), p. 1169.

expansion of the record." *Id.* Thus, the limitations in *Pinholster* apply to expansion of the record as well as to evidentiary hearings. *Moore v. Mitchell*, 708 F.3d 760, 780-784 (6th Cir. 2013); *see also Campbell v. Warden*, 2016 U.S. Dist. LEXIS 15557, *5 (S.D. Ohio 2016); *Anderson v. Robinson*, 2014 U.S. Dist. LEXIS 85114, *7 (S.D. Ohio 2014); *Baumgartner v. Eppinger*, 2013 U.S. Dist. LEXIS 139320, *5 (N.D. Ohio 2013). Therefore, in order to obtain review of his evidentiary documents as they pertain to his constitutional claims, a habeas petitioner must overcome *Pinholster* and establish that the state court's decision fails under § 2254(d)(1) or (2).

**RES JUDICATA**

In his first sub-section of claims, Skatzes argues that his motion to expand the record does not fall under the *Pinholster* restrictions as the court of appeals improperly applied res judicata against him on several of his sub-claims (Motion, ECF. No. 146, PageID 24156-7).

As Respondent previously noted in the Return of Writ, and again in his Memorandum in Response to Petitioner's Memorandum on Gateway Innocence, it is his position that Skatzes is barred from merits review due to procedural default, specifically in Skatzes' failure to appeal the trial court's denial of relief in post-conviction proceedings (Memo, ECF No. 104, PageID 21256 as it relates to Law, Moss, and Jefferson).

In addressing the doctrine of procedural default in habeas, Judge Spiegel noted in *Jamison v. Collins*, 100 F. Supp. 2d 647, 669-70 (S.D. Ohio 2000) that:

> Principles of comity necessary to a federal system narrow a federal court's review of a petition for a writ of habeas corpus brought by a state prisoner. *See Coleman v. Thompson*, 501 U.S. 722, 731-32, 111 S.Ct. 2546, 115 L.Ed. 640 (1991). The Supreme Court explains that "[u]nder our federal system, the federal and the state 'courts [are] equally bound to guard and protect rights secured by the

Constitution.'" *Rose v. Lundy*, 455 U.S. 509, 518, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982) (quoting *Ex parte Royall*, 117 U.S. 241, 251, 6 S.Ct. 734, 29 L.Ed. 868 (1886)); *see Coleman*, 501 U.S. at 731, 111 S.Ct. 2546 (quoting the same). Thus, to ensure the states an opportunity to protect these rights, the doctrine of procedural default requires that the state court retain "the first opportunity to protect these rights, the doctrine of procedural default requires that the state court retain "the first opportunity to address and correct alleged violations of state prisoner's [sic] rights." *Coleman*, 501 U.S. at 731, 111 S.Ct. 2546. The doctrine of procedural default provides that, if a state court previously dismisses [sic] a state prisoner's federal claim on the grounds that the prisoner failed to comply with a state procedural rule, then a federal court ordinarily cannot consider the merits of that federal claim. *Id*. at 729-730, 111 S.Ct. 2546.

The Sixth Circuit Court of Appeals requires a four-part analysis when the State alleges a habeas claim is precluded by procedural default. *Guilmette v. Howes*, 624 F.3d 286, 290 (6th Cir. 2010)(*en banc*); *Eley v. Bagley*, 604 F.3d 958, 965 (6th Cir. 2010); *Reynolds v. Berry*, 146 F.3d 345, 347-48 (6th Cir. 1998), *citing Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *accord Lott v. Coyle*, 261 F.3d 594, 601-02 (6th Cir. 2001); *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001).

First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.
. . . .

Second, the court must decide whether the state courts actually enforced the state procedural sanction, citing *County Court of Ulster County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).

Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.

Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that

> there was "cause" for him to not follow the procedural rule and that
> he was actually prejudiced by the alleged constitutional error.

*Maupin*, 785 F.2d at 138; *accord*, *Hartman v. Bagley*, 492 F.3d 347, 357 (6th Cir. 2007), *quoting*

*Monzo v. Edwards*, 281 F.3d 568, 576 (6th Cir. 2002).

In his initial post-conviction proceeding Skatzes raised the claim that his trial counsel were ineffective for failing to investigate and call exculpatory witnesses (Aaron Jefferson, Jesse Bocook, Wayne Flannigan, defense counsel Jeffery Kelleher and Robert Dixon, three jurors, and an attorney expert Richard Ketcham) regarding the David Sommers murder (Post-Conviction Petition, ECF No. 68-7, PageID 8036-7). He argues that the state court erred in its determination that the portion concerning inmate Aaron Jefferson was barred by res judicata (Motion, ECF No. 146, PageID 24156).

The trial court found that the affidavits of Aaron Jefferson, Jesse Bocook, and Wayne Flannigan did not contain facts sufficient to render the sentence voidable as counsel's decision whether to call a witness is a matter of trial strategy. Further the court found that the portion related to Aaron Jefferson could have been raised on direct appeal as Brookover testified during Skatzes' trial that Aaron Jefferson was present at the beating of Sommers [Trial Tr. 3506] (Decision, Order, and Entry Denying Petitioner's Post-Conviction Petition, ECF No. 68-10, PageID 8631-34). As Skatzes was represented by new counsel on direct appeal, this portion of the ineffective assistance claim should have been raised then, and as such was barred by res judicata in post-conviction. *Id.* at 8632 *citing State v. Cole* (1982), 2 Ohio St. 3d 112, 113-114. Moreover, the additional evidence submitted by Skatzes failed to support a substantive ground for relief. *Id.* at 8632-34.

Skatzes again raised this claim on appeal during post-conviction (Brief, ECF No. 70-1, PageID 9971), as well as before the Ohio Supreme Court, which declined jurisdiction. (Memo, ECF No. 70-11, PageID 11576-80). The state court of appeals affirmed both the trial court's bar of res judicata on the portion pertaining to Jefferson's testimony as well as its holding on the merits.

[*P58] Skatzes' sixth assignment of error states:

[*P59] "THE TRIAL COURT ERRED IN REJECTING PETITIONER'S FIRST GROUND FOR RELIEF, THAT PETITIONER WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL BECAUSE OF TRIAL COUNSEL'S FAILURE TO CALL EXCULPATORY WITNESSES REGARDING THE SOMMERS MURDER."

[*P60] Skatzes presented affidavits from inmates Aaron Jefferson, Jesse Bocook, and Wayne Flannigan, each of whom claimed that Skatzes had not been involved in Sommers' murder, and from his trial attorneys, who claimed that they had not had a strategic reason for failing to call these inmate witnesses. Skatzes claims that these affidavits demonstrate the ineffective assistance of trial counsel in failing to call the inmates to testify on his behalf. The trial court disagreed.

[*P61] As the trial court noted, testimony at Skatzes' trial revealed that Jefferson had been present at Sommers' murder and might have been able to provide exculpatory evidence. Thus, the failure to call Jefferson could have been raised on direct appeal and is barred by res judicata.

[*P62] Neither Jefferson, Bocook, nor Flannigan indicated in his affidavit that Skatzes' trial counsel or other agents of the state knew of the information contained therein before trial, and the attorneys do not claim that they knew this information before trial. If counsel had no reason to know of or suspect these claims, the affidavits fail to establish the constitutional violation of ineffective assistance of counsel.

[*P63] Furthermore, the credibility of the inmates' affidavits is questionable. The trial court observed that the affidavits "raised

12

several red flags." For example, the affidavits of Jefferson and Bocook are inconsistent as to who was involved in killing Sommers, and the inmates' stories have changed over time.

[*P64] The trial court properly concluded that Skatzes' evidence on this issue did not establish that he had been denied the effective assistance of counsel.

[*P65] The sixth assignment of error is overruled.

*Skatzes*, 2008-Ohio-5387; (Decision, ECF No. 70-11, PageID 11640-1.)

Applying the *Maupin* test to this case, the Court notes under Ohio law any constitutional claims that depend on evidence outside the appellate record must be raised in a petition for post-conviction relief under Ohio Revised Code § 2953.21 because evidence cannot be added to the record on direct appeal. *State v. Hooks*, 92 Ohio St. 3d 83 (2001); *State v. Hartman*, 93 Ohio St. 3d 274, 299 (2001); *State v. Keith*, 79 Ohio St. 3d 514, 536 (1997); *State v. Scott*, 63 Ohio App. 3d 304, 308 (1989); *State v. Smith*, 17 Ohio St. 3d 98, 101, fn. 1 (1985). Conversely, constitutional claims including ineffective assistance of trial counsel claims which are supported by the trial record must be raised on direct appeal and will be barred by res judicata if defendant attempts to raise the claim later in post-conviction proceedings. *State v. Reynolds*, 79 Ohio St. 3d 158, 161 (1997); *State v. Steffen*, 70 Ohio St.3d 399, 410 (1994); *State v. Lentz*, 70 Ohio St. 3d 527 (1994); *In re T.L.*, 2014-Ohio-1840, ¶ 16, 2014 Ohio App. LEXIS 1804 (8th App. Dist. 2014). "[P]resentation of competent, relevant, and material evidence *dehors* the record may defeat the application of *res judicata.*" *State v. Lawson*, 103 Ohio App. 3d 307, 315 (12th Dist. 1995). *Harris v. Reed* 489 U.S. 255, 264 (1989), does not preclude a finding that the state procedural rule was actually enforced where the state court decision also relies on an alternative ground. *Scott v. Mitchell*, 209 F.3d 854 (6th Cir. 2000). A claim is not procedurally defaulted unless the state court actually enforced the procedural bar. *Wogenstahl v. Mitchell*, 668 F.3d 307, 327 (6th Cir. 2012).

An alternative ruling on the merits does not forgive a Petitioner's waiver of his claims raised in post-conviction hearing proceedings, nor does it prevent those claims from being procedurally defaulted for habeas corpus review. *See Harris*, 489 U.S. at 264; *Bowling v. Parker*, 344 F.3d 487, 498 (6th Cir. 2003).

The Second District Court of Appeals enforced the procedural bar of res judicata. The court found that Skatzes could have presented a portion of this evidence on direct appeal as it was based on the record. The court then alternatively addressed the merits, reviewed Petitioner's evidence from outside the record presented in support of this claim, and concluded that the additional evidence did not establish a constitutional violation. As previously stated, *Harris v. Reed* does not preclude a finding that the state procedural rule was actually enforced where the state court decision also relies on an alternative ground. *Scott v. Mitchell*, 209 F.3d 854 (6th Cir. 2000).

Determination of whether a state procedural ground is adequate and independent is a federal question that the federal court itself must decide. *Henry v. Mississippi*, 379 U.S. 443, 447 (1965); *Abie State Bank v. Weaver*, 282 U.S. 765, 773 (1931). Ohio's doctrine of res judicata in criminal cases, enunciated in *State v. Perry*, 10 Ohio St. 2d 175 (1967), has been repeatedly upheld in the Sixth Circuit as an adequate and independent state rule. *Durr v. Mitchell*, 487 F.3d 423, 432 (6th Cir. 2007); *Buell v. Mitchell*, 274 F.3d 337 (6th Cir. 2001); *Coleman v. Mitchell*, 268 F.3d 417 (6th Cir. 2001); *Byrd v. Collins*, 209 F.3d 486, 521-22 (6th Cir. 2000); *Rust v. Zent*, 17 F.3d 155, 160-61 (6th Cir. 1994)(citation omitted); *Van Hook v. Anderson*, 127 F. Supp. 2d 899, 913 (S.D. Ohio 2001); *Mason v. Mitchell*, 320 F.3d 604, 628 (6th Cir. 2003). However, the mere existence of a procedural bar is insufficient; the state courts must have relied on it. *Caldwell v.*

*Mississippi*, 472 U.S. 320, 327 (1985).

> When . . . a state court decision fairly appears to rest on federal law, or to be interwoven with the federal law, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion, we will accept as the most reasonable explanation that the state court decided the case the way it did because it believed that federal law required it to do so.

*Michigan v. Long*, 463 U.S. 1032, 1040-41 (1983).

Skatzes did not follow the fairly established procedural rules as required by the Ohio courts and the court enforced that rule against him. In addition, the court also addressed this claim on the merits, and found that Skatzes was not able to establish that he had been denied effective assistance of counsel under *Strickland v. Washington*, thus precluding excuse of any procedural default under *Maupin*, *supra*.

Next Skatzes argues that the state court improperly applied the doctrine of res judicata on the portions of his Seventh Ground for Relief pertaining to affidavits by inmates Taylor and Girdy (Motion, ECF No. 146, PageID 24156). Skatzes presented the claim that counsel were ineffective in their failure to investigate and present evidence to the post-conviction court that Eric Girdy murdered Earl Elder (Post-Conviction Petition, ECF No. 68-7, PageID 8043-49). In support of this claim he provided additional records not previously presented in the trial record which included affidavits from both defense counsel, two jurors, an investigator for post-conviction counsel, autopsy records, and the affidavits of Eric Girdy and Taylor. Petitioner also provided the indictment and conviction of Eric Girdy for the murder of Earl Elder as supplemental evidence. The trial court found that the evidence did not support post-conviction relief for ineffective assistance of counsel under *Strickland v. Washington* and that the failure to call Taylor could have been raised on direct appeal (Decision, Order, and Entry Denying Petitioner's Post-Conviction

Petition, ECF No. 68-10, PageID 8636-7, 8639-41).

Skatzes again raised this claim on appeal, as well as raising it before the Ohio Supreme Court (Brief, ECF No. 70-1, PageID 9957-63); (Memo, ECF No. 70-11, PageID 11570-6). The court of appeals affirmed the trial court, holding:

> **[\*P14]** Skatzes' second assignment of error states:
>
> **[\*P15]** "THE TRIAL COURT ERRED IN REJECTING PETITIONER'S FOURTH AND SIXTH GROUNDS FOR RELIEF, THAT COUNSEL WAS INEFFECTIVE FOR FAILING TO INVESTIGATE AND PRESENT EVIDENCE THAT INMATE ERIC GIRDY MURDERED EARL ELDER AND FOR FAILING TO INVESTIGATE AND CALL INMATES MICHAEL TROCODARO AND THOMAS ANTHONY TAYLOR AS EXCULPATORY WITNESSES."
>
> **[\*P16]** Skatzes claims that he was denied the effective assistance of counsel because his attorneys did not investigate and present evidence that another inmate, Eric Girdy, had murdered Earl Elder or had witnessed Elder's murder and did not call inmates Michael Trocodaro and Thomas Anthony Taylor as exculpatory witnesses.
>
> **[\*P17]** As the state points out, Skatzes did not argue in his petition that his attorneys should have called Girdy *as a witness* to Elder's murder. He argued only that counsel did not adequately pursue and present evidence that Girdy had actually committed the murder. Because it was not raised in the trial court, Skatzes has waived the former argument.
>
> **[\*P18]** The state presented evidence at trial that Elder had been attacked three times in the early hours of the riot: once in the stairwell to which he fled with one of the guards as the riot began and twice hours later in cell L-6-60. In all, Elder received 163 stab wounds, as well as many other injuries, in these attacks, and numerous inmates were involved. Skatzes was implicated in the second attack, and Girdy seems to have been implicated in the third attack. Many of Elder's stab wounds were superficial, but several caused injuries that could have been fatal. During Elder's autopsy, glass was found in one of his more serious wounds.
>
> **[\*P19]** In support of his argument that counsel was ineffective in failing to discover and present evidence that Girdy had killed Elder,

16

Skatzes relied on evidence that included an affidavit from attorney Alice Lynd, who assisted counsel in representing Skatzes in the postconviction proceedings; the coroner's autopsy of Earl Elder; and affidavits from defense counsel, attached to which was a copy of Girdy's indictment for the aggravated murder of Earl Elder.

[*P20] According to Lynd, Girdy admitted to her that he had killed Elder by stabbing him with a piece of glass. Skatzes claims that this exculpatory evidence, coupled with the autopsy report indicating that glass was found in one of Elder's more serious wounds would have changed the outcome of his trial. He also claims that Girdy's subsequent indictment for Elder's murder proves that he was prejudiced by counsel's failure to investigate Girdy.

[*P21] The trial court concluded that the evidence presented regarding Girdy did not support postconviction relief based on the ineffective assistance of counsel. We agree. As the trial court noted, there is nothing in the record to suggest that trial counsel should have known about Girdy's purported involvement at the time of Skatzes' trial. Lynd's interview with Girdy occurred much later, and Skatzes' petition did not point to any reason why counsel should have suspected that an interview with Girdy would be helpful to their case. Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and counsel's actions were not objectively unreasonable if there was no basis to suspect Girdy's alleged involvement.

[*P22] Skatzes also asserts that the state's subsequent indictment of Girdy in 2005 for Elder's murder supports his theory that his attorneys were ineffective and contradicts the state's theory in his own case. The trial court properly concluded, however, that Girdy's subsequent indictment did not show that Skatzes had been wrongly convicted or that he had been denied the effective assistance of counsel. The fact that Girdy may have been involved in these attacks, even if he inflicted a potentially fatal blow, does not preclude the conclusion that Skatzes was also culpable for Elder's murder.

[*P23] Moreover, the trial court noted that Lynd's and Girdy's affidavits were inconsistent. In Girdy's affidavit, he stated that, after some other attacks on Elder, inmates Tim Williams, Doc Ellis, and two other men punched Elder and stabbed him with a piece of glass, after which he "became quiet." In other words, Girdy implied that Williams, Ellis, and two other men inflicted the fatal blows. Lynd claims that, in her interview with Girdy, he admitted that he

17

was one of the "other men." These inconsistencies call Girdy's credibility into question and cast doubt on whether Girdy would have been a helpful witness at trial.

**[\*P24]** Skatzes also contends that the trial court erred in failing to hold a hearing on his claims that his counsel was ineffective in failing to call inmates Michael Trocodaro and Thomas Anthony Taylor to testify on his behalf. Skatzes claims that both men were in a position to witness the events in cell L-6-60, where Elder was killed on the first night of the riot.

\*\*\*

**[\*P27]** Similarly, Taylor's affidavit asserts that Skatzes did not enter Elder's cell the day Elder was killed. However, like Trocodaro, Taylor gave statements in the months after the riot that were consistent with the state's evidence at trial that Skatzes and Snodgrass had attacked Elder in cell L-6-60. Because Taylor had made statements prior to trial that incriminated Skatzes, trial counsel's conduct did not fall below at objective standard of reasonableness in failing to further investigate Taylor as a potentially helpful witness.

**[\*P28]** Finally, we address Skatzes' assertion that the trial court was bound to presume that Girdy's, Trocodaro's, and Taylor's affidavits were truthful under the authority of *Calhoun*, 86 Ohio St.3d at 284. Skatzes implies that the court was unduly skeptical of these affidavits in reviewing his petition for postconviction relief. "However, not all affidavits accompanying a postconviction relief petition demonstrate entitlement to an evidentiary hearing, even assuming the truthfulness of their contents. Thus, where a petitioner relies upon affidavit testimony as the basis of entitlement to postconviction relief, and the information in the affidavit, even if true, does not rise to the level of demonstrating a constitutional violation, then the actual truth or falsity of the affidavit is inconsequential." (Citations omitted.) *Id.* The trial court was confronted with this exact situation. Even if the substance of the affidavits was true, the affidavits did not establish that trial counsel committed errors that affected the outcome of the trial or that

counsel's representation fell below an objective standard of reasonableness. Accordingly, Skatzes was not entitled to postconviction relief on these bases.

[*P29] The second assignment of error is overruled.

*State v. Skatzes*, 2008-Ohio-5387 (2nd Dist. Ohio 2008); (Decision, ECF No. 70-11, PageID 11629-33.)

Skatzes is incorrect in his assertion that his claim was held to have been barred by res judicata. To the contrary, the court of appeals addressed the claim on the merits and considered the additional evidence presented. Thus, as the rule was not applied at all, it follows that the state court could not have misapplied its own law relating to res judicata. As this sub-claim was addressed on the merits, pursuant to *Pinholster*, the Court cannot now consider the contents of additional discovery not previously before the state courts in reaching its determination whether the decision of the state court was an "unreasonable application of [ ] clearly established federal law." 28 U.S.C. § 2254(d)(1).

**Failure to adjudicate**

In his next claim Skatzes argues that *Pinholster* is not applicable as the state courts failed to adjudicate his claim on its merits (Motion, ECF No. 146, PageID 24157). A federal court's review of a state court decision under 28 U.S.C. § 2254(d)(1) is strictly limited to "review of the state court record." However, as the *Pinholster* Court stated, § 2254(e)(2) [only] "continues to have force where Section 2254(d)(1) does not bar federal habeas relief." *Trimble v. Bobby*, No. 5:10-CV-00149, 2011 U.S. Dist. LEXIS 42165, *6 (N.D Ohio, Apr. 19, 2011) *citing Pinholster*, 563 U.S. 170 (2011). The Supreme Court explained that § 2254(d) *only* governs claims that were

adjudicated on the merits in state court whereas § 2254(e)(2)'s limit on habeas discovery "restricts the discretion of federal habeas courts to consider new evidence when deciding claims that were not adjudicated on the merits in state court." *Trimble*, 2011 U.S. Dist. LEXIS 42165, *6, *citing Pinholster* (*emphasis added*). Thus, per Skatzes' argument, he avoids § 2254(d) because there was a failure to adjudicate on the merits, and as such his claims and the additional supporting evidence may be considered under § 2254(e).

In his Seventh Ground for Relief, Skatzes asserts that the state courts failed to adjudicate the portions of his claim pertaining to testimony by Marsh and Law (Motion, ECF No. 146, PageID 24157). During post-conviction the trial court specifically found that:

> Counsel was not ineffective for failing to investigate and call a critical alibi witness regarding the murder of Earl Elder. Skatzes' fifth ground for relief is, therefore, not well taken. Affidavits from both defense counsel, three jurors, and Inmate Robert Lee Decker were provided in support of the fifth ground for relief.
>
> ***
>
> *Although not mentioned in the fifth ground for relief, Skatzes submitted an affidavit by Kenneth Law in support of his postconviction relief petition.* Petitioner's Ex. 27. Kenneth Law testified by affidavit that he saw members of the Black Gangster Disciples (BGD) drag Elder from stairwell L-7 and beat him and later saw Roger Snodgrass, Lucky Roper, Tim Williams and Sterling Barnes participate in killing Earl Elder in L-6. As with Decker's affidavit testimony, Law's statement indicates that Elder was attacked on several occasions by several individuals. Albert Klontz and David McLaughlin also testified by affidavit that Skatzes was not present when inmates, after bringing Elder and Ratcliff out of the stairwell, beat Elder and Ratcliff. Petitioner's Ex. 30 and 32. These statements are consistent with Officer Ratcliff's testimony at trial that a group of black inmates pulled him and Elder out of the stairwell. Trial Tp. 5130-5132. Ratcliff did not identify Skatzes as being present when he was taken from the stairwell. Ratcliff knew Skatzes prior to the riot. Trial Tp. 5199-5200. As a result, the failure to present testimony from Decker, Klontz, and

McLaughlin did not prejudice the outcome of the trial as these witnesses describe only one of several attacks on Earl Elder.

The evidence in support of the fifth ground of relief does not contain sufficient operative facts to demonstrate a constitutional violation and Skatzes' fifth ground for relief is not well taken.

(Decision, Order, and Entry Denying Petitioner's Post-Conviction Petition, ECF No. 68-10, PageID 8637-39) (*emphasis added*).

Under *Pinholster*, a habeas court cannot consider the contents of outside discovery in determining if the decision of the state court was an "unreasonable application of [ ] clearly established federal law," so long as the state court ruling was made on the merits. 28 U.S.C. § 2254(d)(1). However, that is not the case here. The state court failed to make a ruling on the merits because Skatzes failed to raise before it the testimony of inmates Law and Marsh as support for his ineffective assistance of counsel claim in post-conviction relief. The trial court addressed Law's affidavit *sua sponte* and found it to be without merit and undoubtedly would have treated Marsh's affidavit in like manner. ("*Although not mentioned in the fifth ground for relief, Skatzes submitted an affidavit by Kenneth Law in support of his postconviction relief petition . . .*") Skatzes' appellate brief in post-conviction is devoid of reference to either Law or Marsh as it relates to the murder of Elder, as is his subsequent appeal to the Ohio Supreme Court. Even if he had raised the particulars of this claim, the court of appeals would have found that he was barred from doing so based on his failure to properly raise it in the court below. As such, the state court's failure to adjudicate it on the merits does not fall under the *Pinholster* exception. Skatzes cannot now expand the record with this evidence.

**De Novo Review**

In his next sub-group of arguments, Skatzes argues for the expansion of the record as the Court should review *de novo* the remainder of his ineffective assistance of trial counsel claims (Motion, ECF No. 146, PageID 24157). "When the federal court's review is *de novo*, it has the discretion to take new evidence to resolve the petitioner's claim." *Id.*, *citing Sanchez v. Roden*, 753 F.3d 279, 307-08 (1st Cir. 2014), and *Milton v. Miller*, 744 F.3d 660, 673 (10th Cir. 2014).

Specifically, Petitioner asserts that he is entitled to *de novo* review of his First, Third, Seventh, and Eleventh Grounds for Relief as the state court of appeals misapplied the procedural bar of res judicata to several sub-claims, failed to adjudicate others, and the adjudication on the merits as to his remaining sub-claims under ineffective assistance of counsel were objectively unreasonable under §§ 2254(d)(1) and (d)(2) (Motion, ECF No. 146, PageID 24157-8).

As to his First Ground for Relief, Skatzes challenges as unreasonable the adjudication on the portions of the claim pertaining to testimony by inmates Law, Moss, and Jefferson, and expert witness Bartollas. He raised this claim before the trial court, which held that "[c]laims eleven, thirteen, fourteen, and sixteen, raise issues regarding Skatzes' conviction and sentencing for his role in the murder of Correction Officer Robert Vallandingham. . . . [and] raise questions as to who actually killed Officer Vallandingham. The claims do not raise constitutional questions relevant to Skatzes conviction and sentencing for the officer's death." (Decision, Order, and Entry Denying Petitioner's Post-Conviction Petition, ECF No. 68-10, PageID 8641.)

The court found that in regard to the eleventh ground, the Jefferson affidavit offered in support of Skatzes' ineffective assistance of counsel claim alleging their failure to investigate and call exculpatory witnesses was cumulative to the testimony presented at trial and thus offered insufficient operative facts to support post-conviction relief (Decision, Order, and Entry Denying

Petitioner's Post-Conviction Petition, ECF No. 68-10, PageID 8641-2).

Similarly, it found that Law's affidavit in support of the thirteenth ground, ineffective assistance of counsel for failure to investigate and call impeaching witnesses against a key state witness, Anthony Lavelle, regarding the Vallandingham murder, likewise failed to support post-conviction relief as the evidence was consistent with the State's theory at trial (Decision, Order, and Entry Denying Petitioner's Post-Conviction Petition, ECF No. 68-10, PageID 8642-44).

In addition the court found that "counsel was [sic] not ineffective for not investigating or calling Kenneth Law as a witness. Skatzes has not shown trial counsel was [sic] or reasonably should have been aware of Law's affidavit testimony. Law's affidavit testimony is dated September 2003, eight years after the trial." (Decision, Order, and Entry Denying Petitioner's Post-Conviction Petition, ECF No. 68-10, PageID 8644.)

As for the sixteenth ground, ineffective assistance for failing to present evidence that Skatzes was not pleased with Vallandingham's death, the trial court found that defense counsel did in fact present this evidence during trial and that the additional evidence offered was either cumulative or, as in the case of the affidavit testimony of inmates Robert Decker, Albert Klontz and David Marsh was contrary to Skatzes' testimony at trial (Decision, Order, and Entry Denying Petitioner's Post-Conviction Petition, ECF No. 68-10, PageID 8645-47).

Further, Skatzes had not presented evidence that trial counsel were aware, or reasonably should have been aware of Klontz's and Marsh's potential testimony (Decision, Order, and Entry Denying Petitioner's Post-Conviction Petition, ECF No. 68-10, PageID 8646).

Therefore, "[t]he evidence provided in support of the sixteenth ground for relief does not provide sufficient evidence outside the record to demonstrate a constitutional violation sufficient

to render the verdict or sentence voidable." (Decision, Order, and Entry Denying Petitioner's Post-Conviction Petition, ECF No. 68-10, PageID 8647.)

Under his "general" ineffective assistance of trial counsel claims, Skatzes argued ineffective assistance in counsel's failure to call a prison culture expert. The court found that the record does not indicate why the failure to call a prison culture expert could not have been raised on direct appeal and that the affidavits presented in support did not pass the minimum threshold to overcome res judicata (Decision, Order, and Entry Denying Petitioner's Post-Conviction Petition, ECF No. 68-10, PageID 8647-48).

Skatzes presented a similar ground on post-conviction appeal, but as it specifically related to the Sommers' murder, not the Vallandingham murder. See ECF No. 70-1, PageID 9971-75. He failed to raise the majority of this claim [portions relating to affidavits by inmates Law, Moss, Jefferson, Marsh], and as such they are now defaulted. He did however preserve his ineffective assistance of counsel claim for failure to call a prison culture expert. The court of appeals held:

> [*P7] When a petition for postconviction relief claims that trial counsel was ineffective, "[b]efore a hearing is granted, the petitioner bears the initial burden *** to submit evidentiary documents containing sufficient operative facts to demonstrate the lack of competent counsel and also that the defense was prejudiced by counsel's ineffectiveness." *State v. Jackson* (1980), 64 Ohio St.2d 107, 111, 413 N.E.2d 819; *State v. Norton* (August 6, 1999), Greene App. No. 99-CA-23, 1999 Ohio App. LEXIS 3631. We review the alleged instances of ineffective assistance of trial counsel under the two prong analysis set forth in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed.2d 674, and adopted by the Supreme Court of Ohio in *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373. Trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. *Strickland*, 466 U.S. at 688. To reverse a conviction based on ineffective assistance of counsel, it must be demonstrated that trial counsel's conduct fell below an objective standard of reasonableness and that his errors were serious enough

to create a reasonable probability that, but for the errors, the result of the trial would have been different. *Id.*

\*\*\*

**[\*P72]** Skatzes' eighth assignment of error states:

**[\*P73]** "THE TRIAL COURT ERRED IN DENYING PETITIONER'S TWELFTH GROUND FOR RELIEF, THAT HE WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL BECAUSE TRIAL COUNSEL FAILED TO CALL A **PRISON CULTURE EXPERT** TO EXPLAIN HIS STATEMENT RELEVANT TO THE VALLANDINGHAM MURDER."

**[\*P74]** Skatzes asserts that, had his attorney called a prison culture expert to testify at trial, he would have been acquitted of Vallandingham's murder. He claims that such an expert would have explained that the hesitation Skatzes allegedly expressed during the discussions of whether to kill a guard "were as far as an inmate could go in expressing dissent without fear of personal bodily injury or possibly even death." The state claims that this claim is barred by res judicata because it could have been raised on direct appeal, that the evidence would have been cumulative of other evidence that Skatzes was hesitant to kill the guard, and that such evidence would not have been admissible because an expert was not needed to interpret Skatzes' comments.

**[\*P75]** The trial court concluded that Skatzes' claim was barred by res judicata because the record establishes that counsel's failure to call a prison culture expert could have been raised on direct appeal. Further, the court concluded that Skatzes had not shown that the failure to call a prison culture expert fell below an objectively reasonable level of representation.

**[\*P76]** Because Skatzes' argument about the need for a prison culture expert relies, at least in part, on evidence outside the record, it may not have been properly raised on direct appeal, as the trial court suggested. However, we agree with the trial court's conclusion that Skatzes failed to show that it was objectively unreasonable not to call such an expert. We question whether the peer pressure that existed in the midst of the riot was really an issue about which expert testimony was needed or appropriate. Extensive

evidence was presented to the jury about the dynamics within and among the various prison gangs during the riot, the amount of violence used to control and punish inmate behavior, and the stress of the negotiations with authorities.  In our view, the jurors were capable of interpreting Skatzes' behavior under these circumstances without the benefit of expert testimony.  Thus, trial counsel could have reasonably concluded that such an expert was unnecessary.

[*P77] The eighth assignment of error is overruled.

*State v. Skatzes*, 2008-Ohio-5387 (2nd Dist. Ohio 2008).

The Second District corrected the trial court's res judicata error, addressed the ineffective assistance claim on its merits and properly applied the *Strickland* standard in considering the effectiveness of counsel.  *Strickland* states that:

A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components.  First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687.  In other words, to establish ineffective assistance, a defendant must show both deficient performance and resulting prejudice. *Berghuis v. Thompkins*, 560 U.S. 370, 389 (2010), *citing Knowles v. Mirzayance*, 556 U.S. 111 (2009).  The Second District's' decision was not an objectively unreasonable application of the controlling federal law. The court correctly identified *Strickland v. Washington*, 466 U.S. 668 (1984), as the governing standard for ineffective assistance of counsel claims and properly applied that standard to its analysis.

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome.

466 U.S. at 694. *See also Darden v. Wainwright*, 477 U.S. 168, 184 (1986), *citing Strickland*, *supra*; *Wong v. Money*, 142 F.3d 313, 319 (6th Cir. 1998), *citing Strickland*, *supra*; *Blackburn v. Foltz*, 828 F.2d 1177, 1180 (6th Cir. 1987), *quoting Strickland*, 466 U.S. at 687. "The likelihood of a different result must be substantial, not just conceivable." *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011), *quoting Harrington v. Richter*, 562 U.S. 86, 111-12 (2011).

> In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. See *Wong v. Belmontes*, 558 U.S. 15, 27, 130 S. Ct. 383, 175 L. Ed. 2d 328 (2009) (per curiam); *Strickland*, 466 U.S., at 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674. Instead, *Strickland* asks whether it is "reasonably likely" the result would have been different. *Id*., at 696, 104 S. Ct. 2052, 80 L. Ed. 2d 674. This does not require a showing that counsel's actions "more likely than not altered the outcome," but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters "only in the rarest case." *Id*., at 693, 697, 104 S. Ct. 2052, 80 L. Ed. 2d 674. The

likelihood of a different result must be substantial, not just conceivable. *Id.*, at 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674.

*Harrington*, 562 U.S. at 111-112. The court of appeals considered the evidence from outside the trial record and found that the jurors were capable of interpreting Skatzes' behavior during the riot and as such he had failed to make a showing under *Strickland* that counsel were ineffective or that he was prejudiced by this omission. "Counsel's decision whether to call a witness falls within the rubric of trial strategy and will not be second-guessed by a reviewing court." (Decision, Order, and Entry Denying Petitioner's Post-Conviction Petition, ECF No. 68-10, PageID 8631-35, *citing State v. Treesh*, 90 Ohio St. 3d 460, 490, 2001-Ohio-4, 739 N.E.2d at 749.) Further, there is no error in the court's failure to address the portions relating to the affidavits of the other inmates as that claim was not presented to it.

Next, Skatzes argues that the court of appeals decision in his Third Ground for Relief as it related to Bocook, Flannigan, and Marsh was unreasonable. The trial court found that counsel were not deficient under the *Strickland* standard in "falling to investigate and call exculpatory witnesses regarding the David Sommers murder" as the affidavits provided by inmates Bocook and Flannigan were provided well after Skatzes' trial (Decision, Order, and Entry Denying Petitioner's Post-Conviction Petition, ECF No. 68-10, PageID 8631-35).

The trial court noted that "[g]enerally, counsel's decision whether to call a witness falls within the rubric of trial strategy and will not be second-guessed by a reviewing court." *Id.* at 8632, *citing State v. Treesh*, 90 Ohio St. 3d 460, 490, 2001-Ohio-4, 739 N.E.2d at 749. As held by the post-conviction trial court, none of the additional evidence provided by Skatzes indicated that trial counsel were aware of the information provided in the affidavits during the trial. *Id.* at 8634.

The evidence fails to demonstrate trial counsel was aware of the alleged impeaching and exculpatory evidence at the time of trial, that interviewed witnesses would have given impeaching or exculpatory evidence favorable to Skatzes at the time of trial, or that further investigation was necessitated by the original interviews or testimony provided in the Robb Trial. The evidence, also, fails to demonstrate that any alleged deficiency by trial counsel resulted in prejudice.

*Id*. As such, the court held that Skatzes failed to making a showing that counsel were deficient and that the deficiency resulted in prejudice.

On appeal, the Second District affirmed:

[*P7] When a petition for postconviction relief claims that trial counsel was ineffective, "[b]efore a hearing is granted, the petitioner bears the initial burden *** to submit evidentiary documents containing sufficient operative facts to demonstrate the lack of competent counsel and also that the defense was prejudiced by counsel's ineffectiveness." *State v. Jackson* (1980), 64 Ohio St.2d 107, 111, 413 N.E.2d 819; *State v. Norton* (August 6, 1999), Greene App. No. 99-CA-23, 1999 Ohio App. LEXIS 3631. We review the alleged instances of ineffective assistance of trial counsel under the two prong analysis set forth in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed.2d 674, and adopted by the Supreme Court of Ohio in *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373. Trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. *Strickland*, 466 U.S. at 688. To reverse a conviction based on ineffective assistance of counsel, it must be demonstrated that trial counsel's conduct fell below an objective standard of reasonableness and that his errors were serious enough to create a reasonable probability that, but for the errors, the result of the trial would have been different. *Id*.

***

[*P58] Skatzes' sixth assignment of error states:

[*P59] "THE TRIAL COURT ERRED IN REJECTING PETITIONER'S FIRST GROUND FOR RELIEF, THAT PETITIONER WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL BECAUSE OF TRIAL COUNSEL'S FAILURE TO CALL EXCULPATORY WITNESSES REGARDING THE

SOMMERS MURDER."

[*P60] Skatzes presented affidavits from inmates Aaron Jefferson, Jesse Bocook, and Wayne Flannigan, each of whom claimed that Skatzes had not been involved in Sommers' murder, and from his trial attorneys, who claimed that they had not had a strategic reason for failing to call these inmate witnesses. Skatzes claims that these affidavits demonstrate the ineffective assistance of trial counsel in failing to call the inmates to testify on his behalf. The trial court disagreed.

[*P61] As the trial court noted, testimony at Skatzes' trial revealed that Jefferson had been present at Sommers' murder and might have been able to provide exculpatory evidence. Thus, the failure to call Jefferson could have been raised on direct appeal and is barred by res judicata.

[*P62] Neither Jefferson, Bocook, nor Flannigan indicated in his affidavit that Skatzes' trial counsel or other agents of the state knew of the information contained therein before trial, and the attorneys do not claim that they knew this information before trial. If counsel had no reason to know of or suspect these claims, the affidavits fail to establish the constitutional violation of ineffective assistance of counsel.

[*P63] Furthermore, the credibility of the inmates' affidavits is questionable. The trial court observed that the affidavits "raise several red flags." For example, the affidavits of Jefferson and Bocook are inconsistent as to who was involved in killing Sommers, and the inmates' stories have changed over time.

[*P64] The trial court properly concluded that Skatzes' evidence on this issue did not establish that he had been denied the effective assistance of counsel.

[*P65] The sixth assignment of error is overruled.

*State v. Skatzes*, 2008-Ohio-5387 (2nd Dist. Ohio 2008).

The first prong of the *Strickland* analysis is not satisfied by pointing to something a trial attorney could have done but did not do. Rather, with respect to the first prong of the *Strickland*

test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, *and to evaluate the conduct from counsel's perspective at the time [emphasis added].* Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

*Strickland*, 466 U.S. at 689. In other words, counsel's performance is measured by "prevailing professional norms" at the time of the alleged errors. *Strickland, supra*, at 690; *Maryland v. Kulbicki*, 577 U.S. ___, 136 S. Ct. 2, 193 L. Ed. 2d 1 (2015); *Rickman v. Bell*, 131 F.3d 1150, 1154 (6th Cir. 1997). The Supreme Court reemphasized the deference which must be given to state court determinations on ineffective assistance questions:

> "A state court's determination that a claim lacks merit precludes federal habeas relief so long as "fair-minded jurists could disagree" on the correctness of the state court decision," *Harrington v. Richter,* 562 U.S. 86, 101 (2011)(quoting *Yarborough v. Alvarado,* 541 U.S. 652, 664 (2004). The state court decision must be "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *White v. Woodall,* 572 U.S. ___, ___ (2014), slip op. at 4.
>
> When the claim at issue is one for ineffective assistance of counsel, moreover, AEDPA review is "doubly deferential," *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011), because counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment," *Burt v. Titlow*, 571 U.S. ___, ___ (2013), slip op. at 9)(quoting *Strickland v, Washington*, 466 U.S. 668, 690 (1984); internal quotation marks omitted). In such circumstances, federal courts are to afford "both the state court and the defense attorney the benefit of the doubt." *Burt, supra*, at ____, 134 S.Ct., at 13.

*Woods v. Etherton*, 578 U.S. 1149, 1151-52, (per curiam; unanimous), reversing *Etherton v.*

*Rivard*, 800 F.3d 737 (6th Cir. 2015). The state court applied the proper standard and performed the proper analysis. As such, its decision was neither unreasonable nor contrary to federal law as articulated by the Supreme Court of the United States. As the analysis was proper under 2254(d)(1) and (2), Skatzes cannot now, pursuant to *Pinholster*, expand the record with additional evidence, nor is he entitled to *de novo* review on this ground.

Skatzes next argues that the decision on his Seventh Ground for Relief as it pertains to testimony by inmates Girdy and Trocodaro was objectively unreasonable.

[*P14] Skatzes' second assignment of error states:

[*P15] "THE TRIAL COURT ERRED IN REJECTING PETITIONER'S FOURTH AND SIXTH GROUNDS FOR RELIEF, THAT COUNSEL WAS INEFFECTIVE FOR FAILING TO INVESTIGATE AND PRESENT EVIDENCE THAT INMATE ERIC GIRDY MURDERED EARL ELDER AND FOR FAILING TO INVESTIGATE AND CALL INMATES MICHAEL TROCODARO AND THOMAS ANTHONY TAYLOR AS EXCULPATORY WITNESSES."

[*P16] Skatzes claims that he was denied the effective assistance of counsel because his attorneys did not investigate and present evidence that another inmate, Eric Girdy, had murdered Earl Elder or had witnessed Elder's murder[,] and did not call inmates Michael Trocodaro and Thomas Anthony Taylor as exculpatory witnesses.

[*P17] As the state points out, Skatzes did not argue in his petition that his attorneys should have called Girdy *as a witness* to Elder's murder. He argued only that counsel did not adequately pursue and present evidence that Girdy had actually committed the murder. Because it was not raised in the trial court, Skatzes has waived the former argument.

[*P18] The state presented evidence at trial that Elder had been attacked three times in the early hours of the riot: once in the stairwell to which he fled with one of the guards as the riot began and twice hours later in cell L-6-60. In all, Elder received 163 stab

wounds, as well as many other injuries, in these attacks, and numerous inmates were involved. Skatzes was implicated in the second attack, and Girdy seems to have been implicated in the third attack. Many of Elder's stab wounds were superficial, but several caused injuries that could have been fatal. During Elder's autopsy, glass was found in one of his more serious wounds.

**[*P19]** In support of his argument that counsel was ineffective in failing to discover and present evidence that Girdy had killed Elder, Skatzes relied on evidence that included an affidavit from attorney Alice Lynd, who assisted counsel in representing Skatzes in the postconviction proceedings; the coroner's autopsy of Earl Elder; and affidavits from defense counsel, attached to which was a copy of Girdy's indictment for the aggravated murder of Earl Elder.

**[*P20]** According to Lynd, Girdy admitted to her that he had killed Elder by stabbing him with a piece of glass. Skatzes claims that this exculpatory evidence, coupled with the autopsy report indicating that glass was found in one of Elder's more serious wounds would have changed the outcome of his trial. He also claims that Girdy's subsequent indictment for Elder's murder proves that he was prejudiced by counsel's failure to investigate Girdy.

**[*P21]** The trial court concluded that the evidence presented regarding Girdy did not support postconviction relief based on the ineffective assistance of counsel. We agree. As the trial court noted, there is nothing in the record to suggest that trial counsel should have known about Girdy's purported involvement at the time of Skatzes' trial. Lynd's interview with Girdy occurred much later, and Skatzes' petition did not point to any reason why counsel should have suspected that an interview with Girdy would be helpful to their case. Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and counsel's actions were not objectively unreasonable if there was no basis to suspect Girdy's alleged involvement.

**[*P22]** Skatzes also asserts that the state's subsequent indictment of Girdy in 2005 for Elder's murder supports his theory that his

attorneys were ineffective and contradicts the state's theory in his own case. The trial court properly concluded, however, that Girdy's subsequent indictment did not show that Skatzes had been wrongly convicted or that he had been denied the effective assistance of counsel. The fact that Girdy may have been involved in these attacks, even if he inflicted a potentially fatal blow, does not preclude the conclusion that Skatzes was also culpable for Elder's murder.

[*P23] Moreover, the trial court noted that Lynd's and Girdy's affidavits were inconsistent. In Girdy's affidavit, he stated that, after some other attacks on Elder, inmates Tim Williams, Doc Ellis, and two other men punched Elder and stabbed him with a piece of glass, after which he "became quiet." In other words, Girdy implied that Williams, Ellis, and two other men inflicted the fatal blows. Lynd claims that, in her interview with Girdy, he admitted that he was one of the "other men." These inconsistencies call Girdy's credibility into question and cast doubt on whether Girdy would have been a helpful witness at trial.

[*P24] Skatzes also contends that the trial court erred in failing to hold a hearing on his claims that his counsel was ineffective in failing to call inmates Michael Trocodaro and Thomas Anthony Taylor to testify on his behalf. Skatzes claims that both men were in a position to witness the events in cell L-6-60, where Elder was killed on the first night of the riot.

[*P25] Trocodaro stated by affidavit that Skatzes did not enter Elder's cell on L-block. He claimed that only Roger Snodgrass had been involved in the first attack in the cell and that inmate Lucky Roper and a few other inmates inflicted the final blows in a later attack. Trocodaro claimed that Skatzes was protecting inmates in L-block, including Elder, rather than harming anyone. These claims contradicted the statements Trocodaro made to Highway Patrol officers shortly after the riot, in which he provided a version of events consistent with the state's evidence at trial. Specifically, in May 1993, Trocodaro had reported seeing Skatzes escorting Snodgrass to Elder's cell and holding the door while Snodgrass stabbed Elder. Skatzes' trial attorney stated by affidavit that he had spoken with Trocodaro before trial, but Trocodaro not did provide information that called into doubt Skatzes' involvement in Elder's murder.

**[\*P26]** Based on Skatzes' evidence with respect to Trocodaro, the trial court properly concluded that ineffective assistance of counsel had not been demonstrated. Because there is no evidence that Trocodaro told a version of events exonerating Skatzes prior to Skatzes' trial, trial counsel's conduct did not fall below an objective standard of reasonableness in failing to call Trocodaro as a witness or to further investigate him. Moreover, considering the starkly inconsistent stories told by Trocodaro in May 1993 and in his affidavit, there is no reasonable probability that Trocodaro's testimony would have been deemed so reliable as to have affected the outcome of the trial.

**[\*P27]** Similarly, Taylor's affidavit asserts that Skatzes did not enter Elder's cell the day Elder was killed. However, like Trocodaro, Taylor gave statements in the months after the riot that were consistent with the state's evidence at trial that Skatzes and Snodgrass had attacked Elder in cell L-6-60. Because Taylor had made statements prior to trial that incriminated Skatzes, trial counsel's conduct did not fall below an objective standard of reasonableness in failing to further investigate Taylor as a potentially helpful witness.

**[\*P28]** Finally, we address Skatzes' assertion that the trial court was bound to presume that Girdy's, Trocodaro's, and Taylor's affidavits were truthful under the authority of *Calhoun*, 86 Ohio St.3d at 284. Skatzes implies that the court was unduly skeptical of these affidavits in reviewing his petition for postconviction relief. "However, not all affidavits accompanying a postconviction relief petition demonstrate entitlement to an evidentiary hearing, even assuming the truthfulness of their contents. Thus, where a petitioner relies upon affidavit testimony as the basis of entitlement to postconviction relief, and the information in the affidavit, even if true, does not rise to the level of demonstrating a constitutional violation, then the actual truth or falsity of the affidavit is inconsequential." (Citations omitted.) Id. The trial court was confronted with this exact situation. Even if the substance of the affidavits was true, the affidavits did not establish that trial counsel committed errors that affected the outcome of the trial or that counsel's representation fell below an objective standard of reasonableness. Accordingly, Skatzes was not entitled to

postconviction relief on these bases.

[*P29] The second assignment of error is overruled.

*State v. Skatzes*, 2008-Ohio-5387 (2nd Dist. Ohio 2008).

For the reasons set forth in the previous claim, the decision of the state court was neither an unreasonable application of *Strickland*, nor contrary to that precedent. As such, it is subject to the *Pinholster* restrictions placed upon 2254(d)(1) and (2) and Skatzes is not entitled to *de novo* review nor an expansion of the record as to this ground.

Next, Skatzes argues that he is entitled to *de novo* review and an expansion of the record to include additional materials to support his Eleventh Ground for Relief, ineffective assistance of trial counsel during the mitigation phase.

This claim was presented in both direct appeal and post-conviction proceedings. On direct appeal the court found that counsel were not ineffective in their failure to bring Skatzes' alleged mental illness to the attention of the trial court as the record failed to established that he suffered from any such illness. *State v. Skatzes*, 2004-Ohio-6391, ¶223, 104 Ohio St. 3d 195 (2004). The court found that defense presented witnesses to attest to the fact that Skatzes was different from the other Aryans, that he treated everyone with respect, and that he acted as a peacemaker. *Id*. at ¶¶225-237. In addition, several witnesses spoke as to how Skatzes helped protect the prison guard hostages during the inmate takeover. *Id*. at ¶¶238-239. Despite the evidence presented, the jury found that "the aggravating circumstances as to the murder of Elder, the murder of Vallandingham, and the murder of Sommers outweigh the mitigating factors beyond a reasonable doubt." *Id*. at ¶245. The trial judge agreed, and the court of appeals affirmed on direct appeal.

In post-conviction, Skatzes raised additional claims of ineffective assistance of counsel

during mitigation, to wit: that trial counsel were ineffective in failing to hire a qualified

mitigation specialist and in their failure to direct the mitigation; that counsel were ineffective in

their failure to limit the scope of the mitigation investigation; that counsel failed to properly

explain the purpose and need for mitigation to Skatzes as well as to his family and

acquaintances; counsel were ineffective in their failure to identify and present information

pertaining to Skatzes' abusive upbringing, dysfunctional childhood, his head trauma, and his

efforts to be a loving husband and father; counsel's ineffectiveness in their selection of a

psychologist; and counsel's ineffectiveness in their failure to investigate circumstances involving

"riot duress." The trial court again found that Skatzes did not make a showing pursuant to

*Strickland* that his counsel had been deficient in this phase of the hearing, nor that these alleged

deficiencies had prejudiced him. Rather the court found that the many alleged instances of

incompetent lawyering were either barred by res judicata or lacked merit (Decision, Order, and

Entry Denying Petitioner's Post-Conviction Petition, ECF No. 68-10, PageID 8648-53, 8656-

63).

On appeal the state court held:

[*P88] Skatzes' eleventh assignment related to the denial of
postconviction relief states:

[*P89] "THE TRIAL COURT ERRED IN DENYING
PETITIONER'S TWENTIETH, TWENTY-THIRD, TWENTY-
FOURTH, TWENTY-FIFTH, AND TWENTY-SEVENTH
GROUNDS FOR RELIEF, THAT HE WAS DENIED
EFFECTIVE ASSISTANCE OF COUNSEL BECAUSE TRIAL
COUNSEL FAILED TO CONDUCT AND PRESENT AN
ADEQUATE MITIGATION CASE."

[*P90] Skatzes contends that trial counsel failed to utilize a
"wealth of information" that could have helped to mitigate his
sentence and that counsel was thus ineffective in representing him.
Specifically, Skatzes contends that his attorneys did not hire a
competent mitigation expert to investigate the evidence that might

have been offered in his case. As a result, he claims that he was deprived of the possibility that a lesser sentence might have been imposed if counsel had more thoroughly explored and presented evidence about his childhood, a prior head injury, and his mental health.

**[\*P91]** Skatzes relies on *Wiggins v. Smith* (2003), 539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471, which held that trial counsel cannot make a reasonable strategic decision not to present extensive evidence about a defendant's background in mitigation without having first investigated the defendant's background. The Court held that, without an investigation, counsel cannot be presumed to have made a reasonable and informed strategic decision. The Court defined the deference owed an attorney's strategic judgments in terms of the adequacy of the investigations supporting those judgments, stating:

**[\*P92]** [S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Wiggins*, 539 U.S. at 521-522, citing *Strickland*, 466 U.S. at 690-691. See, also, *Williams v. Taylor* (2000), 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389.

**[\*P93]** In *Wiggins*, the Court concluded that the trial attorneys had acted unreasonably and ineffectively in failing to investigate Wiggins' background *before* deciding not to present mitigating evidence based on his background during the sentencing proceedings. In a report prepared for the postconviction proceedings, a forensic social worker reported that Wiggins, who was 27 years old and had no history of violent behavior, had suffered severe physical and sexual abuse in his childhood. His alcoholic mother had left Wiggins and his siblings home alone for days, forcing them to beg for food and eat paint chips and garbage. She locked the kitchen to keep the children from getting food, and she beat them if they broke in. She had sex with men while her children were in the same bed and, on one occasion, intentionally burned Wiggins on a hot stove burner. When he had been removed

to foster care, Wiggins continued to suffer abuse. He was physically abused by two foster mothers and was molested and raped by a foster father. In another foster home, he was repeatedly gang-raped by other children in the home. *Wiggins*, 539 U.S. at 513-517. Moreover, Wiggins' trial counsel did not hire a forensic social worker to prepare a social history of Wiggins, even though the state made funds available for that purpose. Some of counsel's statements at trial indicated that counsel had no knowledge of the abuse. These factors led the Court to conclude that counsel's investigation of mitigation evidence did not reflect reasonable professional judgment, and thus did not meet *Strickland's* performance standards. *Id*. at 533.

**[\*P94]** Skatzes contends that, as in *Wiggins*, his counsel failed to thoroughly and effectively investigate his background for mitigation evidence and to present that evidence at trial. In affidavits from his attorneys and the mitigation investigator, Skatzes presented evidence that the mitigation investigator hired by his attorneys was inexperienced and that the attorneys did not closely oversee her work. Skatzes' attorneys also claim in their affidavits that they were unaware of any abuse or neglect. The mitigation investigator stated that she spoke with Skatzes' sister numerous times during her investigation, but that other family members did not return her calls and that Skatzes attempted to "dictate" the questions she would ask.

**[\*P95]** Although Skatzes' attorneys appear to have been unaware of the alleged abuse in his childhood, there is no suggestion in the petition for postconviction relief that Skatzes' abuse was analogous to the abuse in *Wiggins*. When he sought postconviction relief, Skatzes' former wife, who did not have first-hand knowledge of many of the incidents recounted in her affidavit, offered the following evidence: Skatzes' mother raised him, his sister, and two older half-brothers alone; he was close to his sister but his relationships with the older half-siblings were strained; Skatzes' mother brought many men to the house and engaged in sexual activity with them; Skatzes' mother verbally abused the children; Skatzes' father's death when he was 14 hit him very hard; Skatzes' mother was "cold" and "bitter" and did not show any warmth toward the children; and the children's clothes were often dirty, second-hand, and a source of embarrassment. A childhood friend also stated by affidavit that Skatzes' half-brothers frequently "beat on him." Although these factors paint a picture of Skatzes' childhood that is far from than idyllic, they are much less egregious than the incidents endured by Wiggins.

**[\*P96]** There are also several references in the record to the fact that Skatzes did not cooperate with the involvement of his family in his defense. Skatzes apparently thought that the corrections officer who testified on his behalf was treated harshly by the prosecutors, and he therefore did not want family members called to testify. According to the mitigation investigator, this lack of cooperation extended to her efforts to speak with Skatzes' family. He placed limits on what he wanted the investigator to do, and family members did not cooperate with her efforts to contact them. Thus, trial counsel's ignorance of the abuse now alleged does not appear to have been attributable to a lack of effort, but to a lack of cooperation. As such, it does not constitute ineffective assistance of counsel.

**[\*P97]** Skatzes also contends that trial counsel should have gathered and presented evidence about his "possible traumatic head injury" and depression. On direct appeal, however, Skatzes challenged counsel's effectiveness for failing to present evidence of mental illness. These arguments are substantially similar. Moreover, Skatzes' evidence in support of a head injury and consequent behavioral issues was very thin. He presented an affidavit and report from Douglas W. Scharre, M.D., a professor of neurology and psychiatry, who noted "mild" and "slight" impairments and "hints" of dysfunction. We think it very unlikely that this evidence would have had a significant impact on the jury's determination.

**[\*P98]** In sum, we conclude that the trial court did not abuse its discretion when it concluded that the proffered mitigation evidence would not have changed that outcome of the trial and that counsel were not ineffective in failing to discover or present it.

**[\*P99]** The eleventh assignment of error is overruled.

*State v. Skatzes*, 2008-Ohio-5387 (2nd Dist. Ohio 2008).

Again, for the reasons previously stated, the decision of the state court was neither unreasonable application of United States Supreme Court law, nor contrary to it. As such, it is subject to the *Pinholster* restrictions placed upon 2254(d)(1) and (2) and Skatzes is neither entitled to *de novo* review nor an expansion of the record as to this ground.

**ACTUAL INNOCENCE SUB-CLAIM**

The actual innocence argument arises from Skatzes' First Ground for Relief, sub-claim A, ineffective assistance of trial counsel regarding Vallandingham's murder, specifically, counsel's failure to call favorable witnesses to rebut the State's allegations as to Skatzes' involvement in Vallandingham's murder (Memo on Gateway Innocence, ECF No. 96, PageID 20479, 20487). Skatzes concedes that this claim was not properly raised in the state courts and is therefore procedurally defaulted. *Id*. at PageID 20488. He further argues however, that this default can be excused under the miscarriage of justice exception under *Murray v. Carrier*, 477 U.S. 478, 495 (1986) and that *Schlup v. Delo*, 513 U.S. 298 (1995), can serve as a gateway for habeas merits review on the defaulted sub-claim.

At this time the Court does not analyze Respondent's argument as to whether or not the submitted documents constitute new evidence sufficient to support a claim of actual innocence. Rather, the Court decides the question of whether these documents can be considered under *Pinholster* in reaching a decision as to whether Skatzes has met the threshold for the actual innocence gateway to excuse procedural default on this sub-claim (See Warden's Response to Memo on Gateway Innocence Argument, ECF No. 104); (Warden's Status Report, ECF No. 115).

Recall that the Supreme Court held in *Cullen v. Pinholster*, 563 U.S. 170 (2011), that a federal court's review of a state court decision under 28 U.S.C. § 2254(d)(1) is strictly limited to "review of the state court record," and that evidence acquired through use of an evidentiary hearing may not be considered. *Id.* at 1399. The Supreme Court further stated that section 2254(e)(2) only "continues to have force where Section 2254(d)(1) does not bar federal habeas

relief." *Id.* at 1401.

However, a federal court can appropriately consider evidence outside the state-court record when *Pinholster's* limitations are inapplicable. For instance, when a federal court determines that a state court's decision was unreasonable, and hence not subject to AEDPA deference, consideration of new evidence not presented in state court is appropriate. *See*, *e.g.*, *Mosley v. Atchison*, 689 F.3d 838, 853 n.1 (7th Cir. 2012); *Johnson v. Finn*, 665 F.3d 1063, 1069 (9th Cir. 2011). An evidentiary hearing may also be appropriate when the state court has rejected a claim on a procedural, as opposed to a substantive ground. *See*, e.g., *McClellan v. Rapelje*, 703 F.3d 344, 351 (6th Cir. 2013) ("*Pinholster* only applies to limit consideration of additional evidence when the state court has previously decided the same merits issue later presented to the federal court.")

Further, this Court has recently held, that under *Pinholster*, additional discovery documents that could not be considered in deciding the question presented by 28 U.S.C. § 2254(d)(1), may be considered in determining whether a Petitioner has met the *Schlup* gateway innocence standard. *Jackson v. Warden*, 2014 U.S. Dist. LEXIS 110700, *7 (S.D. Ohio 2014); *Hazel v. Warden*, 2014 U.S. Dist. LEXIS 113597, * 59 (S.D. Ohio 2014); *Clemmons v. Warden*, 2012 U.S. Dist. LEXIS 146029, *19 (S.D. Ohio 2013). "A claim of actual innocence offered to excuse procedural default is not a substantive claim for habeas corpus relief, but a "gateway" claim and therefore not subject to the *Pinholster* restrictions." *Pettus-Brown v. Warden*, 2015 U.S. Dist. LEXIS 11884, *2 (S.D. Ohio 2015).

Therefore, the discovery evidence tendered in support sub-claim A of the First Ground for Relief is permitted for the limited purpose of deciding whether Skatzes has presented sufficient evidence to satisfy the actual innocence gateway to excuse his procedural default. As

Petitioner has filed under seal a motion to expand the record with discovery documents in connection with trial counsel's depositions (Doc. Nos. 146, 147 and attachments), the Court's previous discovery ruling and scheduling is complete, and the actual innocence claim is now ripe for merits review.

**Conclusion**

To the extent the documents in question are purported to be used to expand the record based on improper bars of res judicata, failure to adjudicate, and unreasonable application of federal law, the Motion to Expand the Record is DENIED. To the extent the request for expansion of the record supports Petitioner's actual innocence exception to procedural default claim, the Motion is GRANTED. Consistent with *Cullen v. Pinholster*, 563 U.S. 170 (2011), the documents will not be considered for any other purpose and any ruling on the merits will be strictly limited to evidence contained within the state court record.

June 1, 2017.

s/ *Michael R. Merz*
United States Magistrate Judge